No. 22-35192

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RANDEY THOMPSON,
Plaintiff / Appellee,

v.

BEN SMALL, KEITH CLARK, TOM DINGUS, DERBA
LONG, CYNTHIA McMULLEN, and MYSTI RENEAU, et al.

Defendants / Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
Case No. 2:21-cv-00252-SAB
Honorable Stanley A. Bastian

**PLAINTIFF-APPELLEE RANDEY THOMPSON'S
RESPONSE TO OPENING BRIEF OF APPELLANTS**

Attorneys for Appellee:      Robert F. Greer, WSBA #15619
Megan C. Clark, WSBA #46505
Etter, McMahon, Lamberson,
Van Wert & Oreskovich, P.C.
618 W. Riverside Ave., Suite 210
Spokane, WA 99201

Michael Love, WSBA #20529
Michael Love Law Firm, PLLC
905 W. Riverside Avenue, Ste. 404
Spokane, WA 99201-1099

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................iii

I.      INTRODUCTION ............................................................ 1

II.     THOMPSON'S JURISDICTIONAL STATEMENT ...... 2

III.    STATEMENT OF THE ISSUES ..................................... 4

IV.     STATEMENT OF THE CASE ........................................ 5

   A. The Facebook Post.................................................................. 6

   B. CVSD's Pretextual "Investigation" and Dissemination of
   the Facebook Post. ................................................................. 11

   C. CVSD Unlawfully Demotes Mr. Thompson. ................... 13

V.      ARGUMENT ................................................................. 17

   A. STANDARD OF REVIEW........................................................... 17

     i.   Limitation on Jurisdiction & Standard of Review........ 17

   B. APPELLANTS ARE NOT ENTITLED TO QUALIFIED
   IMMUNITY,    AND    GENUINE    QUESTIONS    OF
   MATERIAL FACT REMAIN. ............................................ 19

     i.   Mr. Thompson's rights under the First Amendment are
     clearly established. ............................................................ 21

     ii.  Appellants'  Conduct  Violated  Mr.  Thompson's
     Constitutional Rights, and Significant Factual Questions
     Remain. ............................................................................. 23

       1. Mr. Thompson's Facebook Post contained speech that
       was a matter of public concern. ........................................ 26

       2. Mr. Thompson Spoke as a Private Citizen. ................. 30

       3. Mr. Thompson's Facebook Post was a Substantial
       and/or Motivating Factor in his Demotion. ....................... 31

4. There was no Adequate Justification for Mr. Thompson's Demotion........................................................ 34

5. Absent Mr. Thompson's Protected Speech, the Appellants Would Not Have Taken the Adverse Employment Action. .......................................................... 41

iii. Appellants' Actions Were Not Reasonable and Questions of Fact Support the Denial of Summary Judgment. ........................................................................... 43

VI.   CONCLUSION................................................................ 49

CERTIFICATE OF COMPLIANCE ....................................... 50

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                          Page(s)

*Allen v. Schribner*,
 812 F.2d 426 (9th Cir. 1987)................................................. 26

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ....................................................... 18, 19

*APWU V. U.S. Postal Service*,
 830 F.2d 294 (D. C. Cir. 1987) ............................................ 35

*Barzilay v. City of New York*,
 2022 WL 2657169 (S.D.N.Y. July 8, 2022) ......................... 41

*Castillo v. Day*,
 790 F.3d 1013 (10th Cir. 2015)...................................... 17, 18

*City of San Diego v. Roe*,
 543 U.S. 77 (2004) ................................................................ 37

*Connick v. Myers*,
 461 U.S. 138 (1983) .................................................. 26, 27, 28

*Coszalter v. City of Salem*,
 320 F.3d 968 (9th Cir. 2003).................................... 19, 20, 43

*Eberhardt v. O'Malley*,
 17 F.3d 1023 (7th Cir. 1994)................................................ 36

*Ellins v. City of Sierra Madre*,
 710 F.3d 1049 (9th Cir. 2013)............................................. 19

*Eng v. Cooley*,
 552 F.3d 1062 (9th Cir. 2009)............................. 19, 23, 24, 26

*Estate of Anderson v. Marsh*,
  985 F.3d 726 (2021) ........................................................ *passim*

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) .................................................. 3

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ................................................ 22, 23, 36

*Gilbrook v. City of Westminster*,
  177 F.3d 839 (9th Cir. 1999) .................................................. 47

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) .................................................. 3

*Glover v. Daniel*,
  318 F.Supp. 1070 (N.D. Ga. 1969) ...................................... 45

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...................................................... 20, 43

*Hartman v. Moore*,
  547 U.S. 250 (2006) ............................................................ 22

*Heffernan v. City of Paterson*,
  578 U.S. 266 (2016) ...................................................... 23, 26

*Johnson v. Jones*,
  515 U.S. 304 (1995) ............................................................ 3

*Kennedy v. Bremerton School Dist.*,
  142 S. Ct. 2407 (June 27, 2022) ........................................... 41

*Keyser v. Sacramento City Unified School Dist.*,
  265 F.3d 741 (9th Cir. 2001) ........................................... 31, 32

*Mahoney Area School Dist. v. B.L.*,
   141 S. Ct. 2038 (June 23, 2021)............................................ 40

*Mullenix v. Luna*,
   577 U.S. 7 (2015)........................................................... 21, 22

*Mt. Healthy City School Dist. Bd. v. Doyle*,
   429 U.S. 274 (1977)............................................................. 41

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................. 27

*Ohlson v. Brady*,
   9 F.4th 1156 (9th Cir. 2021) ........................................... 21, 22

*Perry v. Schniderman*,
   408 U.S. 593 (1972)............................................................. 36

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968)......................................................*passim*

*Piscottano v. Murphy*,
   511 F.3d 247 (2nd Cir. 2007)............................................... 39

*Posey v. Lake Pend Oreille School Dist.*,
   546 F.3d 1121 (9th Cir. 2008)............................................... 30

*Rankin v. McPherson*,
   483 U.S. 378 (1987)......................................................*passim*

*Robinson v. York*,
   566 F.3d 817 (9th Cir. 2009).................................... 24, 25, 34

*Tinker v. Des Moines Independent Comm. School. Dist.*,
   393 U.S. 503 (1969) ........................................................ 44, 45

*U.S. v. Nat'l Treasury Employees' Union*,
   513 U.S. 454 (1995) ............................................................. 37

## **STATUTES**

42 U.S.C. § 1983 .................................................................. 2, 16

## **RULES**

Fed. R. App. P. 28(a) ............................................................... 2

Fed. R. App. P. 28(a)(4)(B) ...................................................... 2

Fed. R. App. P. 28(b) ............................................................... 2

Fed. R. App. P. 28(b)(2) ........................................................... 4

## I.   **INTRODUCTION**

The First Amendment rights and freedoms of Plaintiff Randey Thompson ("Mr. Thompson"), a former school administrator for Central Valley School District ("CVSD") in Spokane, Washington, were violated by Appellants Ben Small, Keith Clark, Tom Dingus, Debra Long, Cynthia McMullen, and Mysti Reneau (collectively "Appellants") after Mr. Thompson posted a private, political post on Facebook related to his views of the 2020 Democratic National Convention. Mr. Thompson was summarily placed on leave almost immediately following the post, and was ultimately demoted by Appellants and CVSD as a direct result of his private, political speech. Mr. Thompson filed suit under 42 U.S.C. § 1983, for violations of his First Amendment rights. Appellants moved for summary judgment, asserting qualified immunity. The District Court properly denied the Appellants' motion for summary judgment, and this appeal followed. Because significant questions of fact remain related to Appellants' actions, intent,

motives, and factors under the applicable *Pickering* analysis, Mr. Thompson respectfully requests this Court affirm the District Court's denial of summary judgment, and remand this matter back to the District Court for further proceedings.

## II. MR. THOMPSON'S JURISDICTIONAL STATEMENT

Mr. Thompson is dissatisfied with the Jurisdictional Statement presented by Appellants. *See* Fed. R. App. P. 28(b). Fed. R. App. P. 28(a) requires Appellants to provide this Court, in part, with "the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts to establish jurisdiction..." Fed. R. App. P. 28(a)(4)(B). Appellants fail to demonstrate and address proper appellate jurisdiction and its limited parameters in this context.

The Supreme Court has delineated between denials of summary judgment with regard to qualified immunity. On one hand "any portion of a district court's summary judgment order that, though entered in a qualified immunity case, determines

only a question of evidence sufficiency, *i.e.* which facts a party may or may not be able to prove at trial … is not appealable." *Estate of Anderson v. Marsh*, 985 F.3d 726, 730-31 (2021) (citing *Johnson v. Jones*, 515 U.S. 304 (1995)). "By contrast, any portion of a summary judgment order that turns on the application of clearly established law to a given (for appellate purposes undisputed) set of facts is immediately appealable." *Id.* at 731. The *Marsh* Court held:

> We have understood *Johnson* to mean "[a] public official may not immediately appeal 'a *fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.' " *Foster*, 908 F.3d at 1210 (quoting *Johnson*, 515 U.S. at 307, 115 S.Ct. 2151); *see also George*, 736 F.3d at 835 (underscoring that we may not review on interlocutory appeal "the question whether there is enough evidence in the record for a jury to conclude that certain facts are true"). Our interlocutory review jurisdiction is limited to resolving a defendant's "purely legal ... contention that [his or her] conduct 'did not violate the [Constitution] and, in any event, did not violate clearly established law.'

*Id*. Under *Marsh*, this Court's review is "confined to the question of whether the defendant would be entitled to

qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor. *Id*. This limitation was not adequately addressed by Appellants.

## III. <u>STATEMENT OF THE ISSUES</u>

Mr. Thompson is similarly dissatisfied with the Appellants' recitation and statement of the issues before this Court. *See* Fed. R. App. P. 28(b)(2). The only issue before this Court is whether Appellants "are entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved" in Mr. Thompson's favor. *See Marsh*, 985 F.3d at 730-31. The answer to such statement is a resounding "No." Appellants' stated Issues Nos. 1, 2, 3, and 4 are not questions before this Court. Assuming *arguendo* these questions are before this Court, each heavily relies upon disputed facts, the determination of which are either not in the purview of this Court, or must be taken in the light most favorable to Mr. Thompson, not Appellants.

## IV.   <u>STATEMENT OF THE CASE</u>

Randey Thompson is sixty years old and has been employed by Central Valley School District ("CVSD") for over thirty years. SER 27. Mr. Thompson was employed as an assistant principal at Evergreen Middle School from August 2019 to June 2021, which is situated within the Central Valley School District in Spokane, Washington. SER 28. Prior to the events that resulted in this action, Mr. Thompson was not disciplined or demoted during his entire employment with CVSD. *Id*. Mr. Thompson instead received satisfactory or higher job performance evaluations, along with several promotions. SER 27-28. For all intents and purposes, Mr. Thompson was a model employee. *See id.*; *see also* SER 38-43. In February of 2020, Mr. Thompson received three letters of recommendation for principal positions from CVSD representatives. SER 38-43. These recommendation letters expressed that Mr. Thompson garnered trust and respect among students, staff, and the community that "foster[ed] a

great learning environment." *Id*. The letters praised Mr. Thompson's "high ethics," "leadership," and "character," and described him as a "truly effective administrator and leader." *Id*. One letter stated: "In every situation, [Mr. Thompson] treats staff, community members and students with the highest degree of respect. Whether celebrating successes or providing interventions for a student who violated school policy; he treats them all with dignity. His kindness and honesty emerge in all of his interactions." SER 41.

## A. The Facebook Post.

On August 17, 2020, after watching the Democratic National Convention at home on television, Mr. Thompson posted on his private Facebook account. SER 29. The post that was made reads as follows:

> "Demtard convention opens and the only facts spoken were the names. Lie after lie. The fact checkers could retire on Michelle Obama's rant alone. If you need to lie to try and win you are just shit. If you believe them you are even worse. Wake the f@#k up America. You are being played by a fake media, athlete and performers (who are really

clueless and flyers with pedophile man) and the
former DNC, now just the little puppet Marxist
BLM, Antifa and Soroas socialist. You are missing
out on a great country and the rest of us are sick and
tired of your act and going to take you to the
woodshed for a proper education. May God help you
to pull your heads out of your asses. Time for the red
tide. Lets see how long until the FB liberal defenders
take this one down.

SER 46.[1] This post was made outside of school hours and

through Mr. Thompson's private Facebook account. SER 28. It

was not made on school property or using school equipment.

*Id*. The post was available to approximately 12 close Facebook

friends of Mr. Thompson. *Id*.; SER 80. The post did not

identify Mr. Thompson as an employee or assistant principal

working within the CVSD. *Id*. Two days later, on August 19,

2020, Mr. Thompson received a phone call from CSVD

Assistant Superintendent, Jay Rowell. SER 28-29. Mr. Rowell

---

[1] There is a separate Facebook post that appeared later and is
the subject of dispute. *See* SER 28 at ¶ 9; *see also* SER 45, 85-
86.

specifically asked if Mr. Thompson had made a Facebook post about the Democratic National Convention. SER 30. Mr. Thompson stated he made a political post on his Facebook account, and that it was only sent to friends and relatives who shared Mr. Thompson's political beliefs. *Id*.; SER 80. Mr. Thompson further told Mr. Rowell the Facebook post was made on his own personal time, and with his own personal device. SER 30. He also advised Mr. Rowell that he believed the Facebook post was protected political speech under the First Amendment. *Id*. Mr. Rowell disagreed that it was protected, though he had only seen the post a half-hour before calling Mr. Thompson. *Id*.; SER 80. Mr. Rowell said "they got it" and that it was "serious." SER 30. Mr. Rowell then informed Mr. Thompson he was being placed on administrative leave effective immediately, and he prohibited Mr. Thompson from coming to any school property and from having any contact with any district employee, parent, or student. *Id*. When asked, Mr. Rowell would not reveal who

provided him with the Facebook post, who received it, or if there had been any complaints. *Id*. Immediately after speaking to Mr. Rowell, Mr. Thompson deleted the Facebook post. *Id*.

Then, on August 22, 2020, Mr. Thompson received a letter dated August 20 from CVSD. SER 31, 48. The letter accused Mr. Thompson of unprofessional conduct, and reiterated Mr. Rowell's telephone call, that Mr. Thompson was on immediate administrative leave. *Id*. Between August 20, 2020 and September 3, 2020, CVSD engaged in an entirely unwarranted "investigation" into Mr. Thompson's Facebook post. 2-ER-58; 3-ER-220.

Mr. Thompson came to learn that a former colleague, Megan McMurtrey, who worked for a different school (Central Valley High School) for CVSD saw Mr. Thompson's private Facebook post. SER 31. Unbeknownst to Mr. Thompson, Ms. McMurtrey took a screenshot of the post and disseminated it to others who were not co-employees, students, or parents with whom Mr. Thompson worked or taught. *Id*. Ms. McMurtrey

sent the screenshot to her sister Chrissy Swan, another employee at CVSD (an elementary school assistant principal), who in turn forwarded the screenshot to a second employee at CVSD, Sasha Deyarmin (an elementary school principal), and who then forwarded the screenshot to her husband, another CVSD employee (a high school assistant principal). *Id*. Ms. Deyarmin's husband sent the screenshot to CVSD Superintendent Ben Small. *Id*.

About a half hour after Mr. Small received the post, Mr. Thompson was summarily placed on administrative leave by Mr. Rowell. SER 29-30; SER 80. This was solely based upon the small handful of then-unidentified people who later claimed they were personally offended by Mr. Thompson's private, political Facebook post. SER 29-31. None of these individuals worked with Mr. Thompson. SER 31. When first asked, CVSD refused to identify any student or coworker at Evergreen Middle School, where Mr. Thompson worked, that was offended by the political statement. SER 31; SER 80.

### B. **CVSD's Pretextual "Investigation" and Dissemination of the Facebook Post.**

After Mr. Thompson was placed on immediate administrative leave because of his Facebook post, CVSD then began and engaged in a pretextual investigation of Mr. Thompson. First CVSD hired a third-party attorney to "interview" the individuals responsible for disseminating Mr. Thompson's Facebook post. 3-ER-220. These individuals expressed varying degrees of "concern" regarding the Facebook post; however, several noted it did not appear the post was public. 3-ER-235-236, 238, 240-241. Notably, in response to the question "Any similar comments about race, sex, disability before?", none of the individuals interviewed with respect to the Facebook post expressed **any** prior issue with Mr. Thompson. 3-ER-236 ("Nothing stands out."); 3-ER-238 ("Never witnessed anything like this with him" at administrative retreats); 3-ER-240 ("Nothing negative… He has been very helpful."); 3-ER-241 ("Never an issue with him

before. Never heard him talk about politics."). As part of the third-party attorney's interview process, she also reached out to individuals selected by CVSD who made disputed allegations about Mr. Thompson using terms like "snowflake" or "Tide pod eaters". 3-ER-225; SER 78-88.

In addition to the third-party attorney's interviews regarding the Facebook post, CVSD – through assistant superintendent Jay Rowell – conducted "Impact Interviews." 2-ER-60. These interviews only served to disseminate Mr. Thompson's post further. *See* 2-ER-61; SER 82. Mr. Rowell selected individuals to interview, including two board members, two in-district administrators, two in-district teachers, and two current parents. *Id*. The individuals were shown the Facebook post. *Id*. Mr. Rowell then asked the individual's impressions or thoughts about the post. *Id*. These statements have never been vetted or reviewed through any further discovery. SER 82, SER 90-95. Mr. Thompson has continued to dispute these allegations. *See* SER 78-88.

## C. **CVSD Unlawfully Demotes Mr. Thompson.**

CVSD and Appellants persisted in the unlawful treatment of Mr. Thompson. On September 22, 2020, Mr. Thompson attended a hearing related to his Facebook post. SER 32; 2-ER-62. CVSD, through Mr. Rowell, questioned Mr. Thompson primarily with respect to his Facebook post. 2-ER-62. As Mr. Rowell declared: he had "a number of questions regarding what [Mr. Thompson] had posted, who he intended to see the post and questions about the nature of the words and phrases he used in the post." 2-ER-63. Mr. Thompson reiterated that his post was private. 2-ER-63. Mr. Thompson also confirmed that he had immediately deleted the post and attempted to disable his Facebook account. 2-ER-64-65. Most importantly, Mr. Thompson reiterated that he shared his own personal, private opinions about the state of the political system and his frustration surrounding the same. 2-ER-65. The primary purpose of this September 22 hearing was clearly to question Mr. Thompson about the Facebook post and its political

content[2].

 As a direct result of Mr. Thompson's Facebook post, in

---

[2]Mr. Thompson provided CVSD with information that he believed the Facebook post had been altered without his consent. SER 33-34, 84-86. CVSD hired a forensic examiner with regard to Mr. Thompson's claims of alterations. 2-ER-68-69. This examiner's report was, at best, inconclusive, specifically stating he was "unable to determine if the wording [in the Facebook post] which Mr. Thompson alleges to be the original is authentic." 3-ER-304 Notably, Mr. Thompson worked directly with the forensic examiner to provide relevant information. *See id.* Taking the facts in the light most favorable to Mr. Thompson, this report does not support Appellants' arguments and continued baseless assertions that Mr. Thompson "lied." This is, simply, another in a litany of disputed material facts which preclude summary judgment. *See* SER 33-34.

January 2021, Mr. Thompson was mailed a Transfer Agreement. SER 33, 50-53. On January 28, 2021, Mr. Thompson was informed that Mr. Small had decided to propose the Transfer Agreement based primarily on Mr. Thompson's Facebook post. SER 33. Mr. Small also based the Transfer Agreement on alleged (and disputed) remarks Mr. Thompson had allegedly made **years** earlier, for which Mr. Thompson was never disciplined or counseled about (nor had any prior complaint been made about these alleged remarks.) *Id*.

A second hearing was held on May 6, 2021. SER 34. After this hearing, Mr. Thompson received written notice from Ben Small that he was being demoted. SER 34, 55-56. Mr. Thompson immediately requested a hearing before the CVSD Board to reconsider Mr. Small's demotion. SER 35. Prior to his hearing, Mr. Thompson saw his job as an Assistant Principal at Evergreen Middle School was posted online, indicating Mr. Small's decision was final irrespective of Mr. Thompson's requested reconsideration. *Id*.

On June 14, 2021, Mr. Thompson's hearing with the CVSD Board occurred. SER 35. At this hearing, the Board was dismissive of Mr. Thompson's information and evidence, was cavalier with Mr. Thompson's arguments, and ultimately did not substantively review the information he prepared to provide them. *Id*. Then on June 25, Mr. Thompson received a letter from the Board upholding and ratifying Mr. Small's unlawful demotion. SER 35-36, 60. CVSD informed Mr. Thompson that he was assigned to be a "World History and Health and Fitness Teacher at Ridgeline [High School]" despite that fact that Mr. Thompson had never taught this subject. *Id*

Mr. Thompson filed suit against CVSD and Appellants on August 23, 2021 under 42 U.S.C. § 1983, alleging in part that his First Amendment rights had been violated. 2-ER-11-24. On January 12, 2022, Appellants filed a Motion for Summary Judgment on the sole question of qualified immunity for the individual Appellants. 3-ER-309. On February 24, 2022, the District Court denied Appellants' Motion for Summary

Judgment on the question of qualified immunity, finding questions of fact exist. 1-ER-1-9. The instant appeal followed. 3-ER-405.

## V.     ARGUMENT

### A. STANDARD OF REVIEW

#### i.     Limitation on Jurisdiction & Standard of Review.

As discussed above, this Court's jurisdiction and scope of review in this appeal is "circumscribed." *See Marsh*, 985 F.3d at 726. The denial of summary judgment is not ordinarily appealable. *Castillo v. Day*, 790 F.3d 1013, 1017 (10th Cir. 2015). "Thus, while this Court lacks jurisdiction to review the district court's rulings on the sufficiency of the evidence, [it] nevertheless may determine whether a given set of facts violates a clearly established constitutional right." *Id*. Here, the District Court's Order expressly found questions of fact precluded summary judgment on the issue of qualified immunity, finding:

> [At] this stage of the proceedings, questions of fact exist regarding whether Plaintiff's speech was speech on a matter of public concern; whether Plaintiff spoke as a private citizen when making the speech; and whether Defendant had adequate justification to treat Plaintiff differently than other members of the public. Consequently, Defendants have not shown they are entitled to qualified immunity.

1-ER-9. Under *Marsh*, this Court is limited to the **legal** question of whether or not Appellants are entitled to qualified immunity, and lacks jurisdiction beyond such contentions under *Marsh*. *Marsh*, 985 F.3d at 730-31. Appellants' complete side-step of the actual issue – that Mr. Thompson's Facebook post was protected under the First Amendment and he was demoted because of it – does not even substantively address the "given set of facts" that Mr. Thompson asserts violated his rights.

Insofar as this matter even falls under this Court's jurisdiction, this Court's review is *de novo*. *See Castillo*, 790 F.3d at 1017. At summary judgment, the District Court's sole determination is whether there is a genuine issue of material

fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-29 (1986). The District Court does not weigh evidence and its credibility, or determine the truth or veracity of facts. *See id*. For purposes of qualified immunity, the Court resolves "all factual disputes in favor of the party asserting the injury." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

## B. APPELLANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY, AND GENUINE QUESTIONS OF MATERIAL FACT REMAIN.

"The qualified immunity inquiry involves two sequential questions: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right?; and (2) if a violation could be made out on a favorable view of the parties' submissions, ... was the right ... clearly established ... in light of the specific context of the case?" *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009); *see also Ellins*, 710 F.3d at 1064. Government officials are entitled to qualified immunity only

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Coszalter v. City of Salem*, 320 F.3d 968, 979 (9th Cir. 2003)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As a preliminary matter, Appellants attempt to evade the ultimate issue in this case: that Mr. Thompson was unlawfully demoted because of his private, political Facebook post. Appellants' arguments focus on Mr. Thompson's alleged "other conduct at school," for which significant factual, veracity, and credibility questions remain, as recognized by the District Court. This evasion is a red herring: it impermissibly forces this Court to make credibility determinations as to the genuineness of the testimony Appellants rely upon, and impermissibly make determinations as to the sufficiency of this evidence, for which this Court lacks jurisdiction. It further does not take the facts in the light most favorable to Mr. Thompson. Notably, Appellants do not assert that Mr.

Thompson's Facebook post is not protected under the First Amendment, and they **agree** that Mr. Thompson's Facebook post was the impetus and trigger for Appellants' pretextual and manufactured "investigation". *See Opening Brief*, p. 24.

Qualified immunity was appropriately denied by the District Court. Appellants' attempts to usher this matter away from their unlawful conduct, and away from Mr. Thompson's protected speech, must fail.

      i.   <u>Mr. Thompson's rights under the First Amendment are clearly established.</u>

"It has been well accepted for more than fifty years that public employees have First Amendment rights to speak out on matters of public interest and concern, so long as the speech does not interfere with the legitimate and orderly administration of government operations." *Ohlson v. Brady*, 9 F.4th 1156, 1157-58 (9th Cir. 2021). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates

that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The speech primarily at issue in this case, which precipitated and directly led to Appellants' actions and decisions, is Mr. Thompson's private, political Facebook post. *See* SER 28-29, 46. Appellants impermissibly attempt to focus this Court on other alleged conduct that occurred[3].

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Public employees do not surrender their First Amendment rights merely because of their employment status. *Garcetti v. Ceballos*, 547 U.S. 410, 417

---

[3] Discovery in this matter is in its infancy. *See* SER 90-91, 94-95. Mr. Thompson has not had an opportunity to depose any individual that provided a Declaration or do further discovery on the allegations made by these individuals, which is yet another basis for which the District Court's ruling should be affirmed. *See id*.

(2006). In particular, "with few exceptions, the Constitution prohibits a government from dismissing an employee because the employee supports a particular political candidate." *Heffernan v. City of Paterson*, 578 U.S. 266, 270 (2016). "The basic constitutional requirement reflects the First Amendment's hostility to government action that 'proscribe[s] what shall be orthodox in politics." *Id*. at 1417. Appellants do not appear to argue this point significantly. Rather, Appellants assert the alleged "other conduct" was not protected. This argument fails to recognize the substantial and motivating part Mr. Thompson's protected speech played in his ultimate demotion.

      ii.    <u>Appellants' Conduct Violated Mr. Thompson's Constitutional Rights, and Significant Factual Questions Remain.</u>

"It is well settled that the state may not abuse its position as an employer to stifle the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public concern." *Eng*, 552 F.3d at 1067 (citing

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The Court engages in a balancing test "between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. To do this, the Court relies upon the five-step test under *Pickering*:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial and motivating factor in the adverse employment action; (4) whether the state had adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Id*. Where the plaintiff satisfies the first three elements, the burden shifts to the employer to establish or prove that the government had adequate justification for treating the employee differently, and whether the state would have taken the adverse employment action even absent the protected

speech. *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009). The Court's "analysis of these questions, [is] further complicated by restraints on [the Court's] interlocutory appellate jurisdiction, [because the questions] involve a complex array of factual and legal inquiries requiring detailed explanation." *Id*. In the instant matter, while the District Court specifically found genuine issues of material fact remain with respect to steps (1), (2), and (4), there are, however, significant factual questions that remain for each inquiry under the *Pickering* analysis. Appellants have erroneously attempted to circumvent their unlawful behavior, instead drawing this Court's focus on their manufactured "reasons" for demotion. In doing so, Appellants support the District Court's order denying qualified immunity: there are substantial questions of fact for all five *Pickering* steps. Taken in the light most favorable to Mr. Thompson, the District Court's denial of summary judgment was appropriate. Each element of the

*Pickering* analysis will be addressed in turn, focusing on the protected conduct – Mr. Thompson's Facebook post.

        1.  <u>Mr. Thompson's Facebook post contained speech that was a matter of public concern</u>.

"Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983); *see also Eng*, 552 F.3d at 1070. The free and unhindered debate on matters of public importance constitutes a core value of the First Amendment. *See Pickering*, 391 U.S. at 573. The Constitution prohibits a government employer from discharging or demoting an employee because the employee supported a particular political candidate. *Heffernan*, 578 U.S. at 270. The determination of whether an employee's speech deals with an issue of public concern is made with reference to the content, form, and context of the speech. *Allen v. Schribner*, 812 F.2d 426, 430 (9th Cir. 1987). This principle was applied in *Rankin v.*

*McPherson*, 483 U.S. 378 (1987). *Rankin* involved a Sheriff's Department employee, McPherson, who made a political statement to a co-worker in the office concerning an assassination attempt on President Ronald Reagan, stating: "if they go for him again, I hope they get him." *Id*. at 382. The statement was overheard by a co-worker, and was later reported to the Sheriff (Rankin) who then fired McPherson. One primary argument by the government, was that McPherson's speech was not on "a matter of public concern."

*Id*. at 387. The Supreme Court rejected this argument, holding:

> The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern. '[D]ebate on public issues should be uninhibited, robust, and wide open and…' may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government or public officials.

*Id*. at 387 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). Speech on matters of public concern occupy the highest rung of the hierarchy of First Amendment values

27

and is entitled to special protection. *See Connick*, 461 U.S. at 145.

Appellants state the "speech in question" does not relate to Mr. Thompson's Facebook post. *See Opening Brief*, p. 27. Instead, Appellants do not mention Mr. Thompson's Facebook post **at all** under this step of *Pickering*. Mr. Thompson has asserted – and Appellants have not reasonably disputed – that his Facebook post precipitated every subsequent action by Appellants. This speech was on a matter of public concern: namely, the 2020 Democratic National Convention. Mr. Thompson's statements were purely political, and expressed his views, opinions, and frustrations with the current political climate, directed at the Democratic National Committee and its Convention. *See* SER 45; 79-80. This speech is similar to *Rankin*, wherein the Court found it "plainly dealt with a matter of public concern. The statement was made in the course of a conversation addressing the policies of the President's administration. It came on the heels of a news bulletin

regarding what is certainly a matter of heightened public attention: an attempt on the life of the president." *Rankin*, 483 U.S. at 386. The content of McPherson's speech, though her superiors disagreed with it, was entitled to no less protection. *Id*. at 384. "Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees' speech." *Id*.

With respect to the other alleged conduct that Appellants assert precipitated Mr. Thompson's unlawful demotion, the District Court was correct in finding a genuine dispute of material fact exists. Appellants assert the other conduct as though it is undisputed, verified, or otherwise wholly credible. However, Mr. Thompson has significant disputes with respect to any alleged derogatory speech, in addition to its being taken out of context by Appellants to erroneously support their arguments. SER 26-65; SER 78-88. Mr. Thompson has not

been afforded any further discovery related to these allegations. SER 90-91, 94-95. This same argument applies to Appellants' allegations of dishonesty. Appellants do not dispute that Mr. Thompson's Facebook post and its contents satisfies this step of *Pickering*, and there are significant factual disputes as to Appellants' other contentions that preclude a reversal of the District Court's denial of summary judgment.

      2.  Mr. Thompson Spoke as a Private Citizen.

"Statements are made in a speaker's capacity as a citizen if the speaker 'had no official duty' to make the questioned statements or if the speech was not the product of performing the tasks the employee was paid to perform." *Posey v. Lake Pend Oreille School Dist.*, 546 F.3d 1121, 1127, n.1 (9th Cir. 2008). Appellants again attempt to shift focus to conduct that carries with it significant factual dispute, for which the Court properly denied summary judgment. The Facebook post did not identify Mr. Thompson as an employee of the School District, was on his own personal cell phone (not on a school

computer or device), was not made on a school email, and was not directed to any co-employee at Evergreen Middle School, or to any student or parent of a student at Evergreen Middle School or within the School District. SER 79-80. Mr. Thompson was not engaged in political speech as part of any official duty he was hired or paid to perform. SER 29. Instead, the post was sent to about a dozen close friends who shared similar political beliefs and opinions, other than a former co-employee who mistakenly received the post. *Id*. Similar to step one, Appellants' focus on alleged conduct that occurred during Mr. Thompson's employment does not address the underlying speech that was made by Mr. Thompson as a private citizen.

3. <u>Mr. Thompson's Facebook Post was a Substantial and/or Motivating Factor in his Demotion.</u>

A plaintiff can show that the retaliation was a substantial or motivating factor behind a defendant's adverse employment action where: (1) there is evidence of proximity in time between the protected action and the retaliatory employment

decision from which a jury could logically infer that he was terminated or retaliated against for the speech; (2) there is evidence that the employer expressed opposition to the speech, either to the plaintiff himself or to others; and (3) there is evidence that the employer's proffered explanations for the adverse employment action were false and pretextual. *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001). Mr. Thompson has provided factual evidence demonstrating these elements. While Appellants disagree, it is not the purview of this Court to engage in factual disputes. *See Marsh*, 985 F.3d at 730-31. On the contrary, the significant disputes under this *Pickering* step alone justify the Court's denial of summary judgment.

Just two days after Mr. Thompson made the private political Facebook post, he was summarily placed on administrative leave. SER 29-30. He was immediately directed and prevented from entering onto any school district premises or speaking with other employees, students, or parents. *Id*.

CVSD and Appellants then engaged in an entirely pretextual investigation of Mr. Thompson, who, theretofore, had not been the subject of any disciplinary action or complaint. SER 28. Mr. Thompson's Facebook post was the undisputed "trigger" of the "investigation" that was directed and conducted by Appellants. Appellants argue that the Facebook post was not the "sole" reason for Mr. Thompson's ultimate demotion. *See Op. Br.*, p. 24. But this statement does not conform with the applicable law. Mr. Thompson's Facebook post need not be the "sole" reason for his unlawful demotion. Rather, it must be demonstrated that his clearly protected, private political speech was a motivating factor. Mr. Thompson has provided evidence that it was. SER 26-65; SER 78-88.

Moreover, the specific actions taken by the individual Appellants preclude summary judgment on this element. The primary and motivating purpose of the "investigation" was the Facebook post. Despite Mr. Thompson's evidence to the contrary, and disputes of out-of-context statements allegedly

made by him, Mr. Small unlawfully demoted Mr. Thompson. The Board then ratified this unlawful demotion. All of the decisions Appellants made stemmed from and were based – either in whole or in motivating part – on the Facebook post. Viewing these facts in the light most favorable to Mr. Thompson, this element presents classic disputes of material fact, supporting the District Court's denial of summary judgment.

### 4. There was no Adequate Justification for Mr. Thompson's Demotion.

Once the injured party (Mr. Thompson) has established the first three elements, the burden shifts to the employer to show that the state or government had adequate justification for treating the employee differently from other members of the general public, and to establish that the state or School District would have taken adverse employment action even absent the protected speech. *Robinson*, 566 F.3d at 822. Appellants bear the burden of justifying legitimate grounds for the demotion of

Mr. Thompson for exercising his First Amendment rights by making political statements in a Facebook post. *Rankin*, 483 U.S. at 388. The District Court found questions of fact existed for this element in particular. 1-ER-9.

Where the political "statements are in no way directed towards any person with whom" Mr. Thompson "would normally be in contact in the course of his daily work as" an assistant principal, there is "no question of maintaining either discipline by immediate superiors or harmony among coworkers" present in justifying his demotion. *See Pickering*, 391 U.S. at 569-70. Where a government agency cannot show that an employee's speech caused any "concrete harm" to the public's confidence in the agency's performance of its services, the mere assertion of an otherwise legitimate concern cannot outweigh the employee's interest in engaging in political debate. *APWU V. U.S. Postal Service*, 830 F.2d 294, 303-04 (D. C. Cir. 1987). No concrete harm has been established.

Important to this consideration, is the speech at issue in the instant case. In *Pickering* and later cases, the speech at issue primarily dealt with criticisms of the government employer, policies, or actions of supervisors or coworkers. *See Pickering*, 391 U.S. at 564 (teacher's letter to newspaper criticizing school board fundings); *Perry v. Schniderman*, 408 U.S. 593, 595 (1972) (state junior college professor's criticism of board of regents' refusal to elevate college to four-year status); *Garcetti*, 547 U.S. 410 (deputy district attorney submitted internal memo recommending dismissal of criminal case). Here, Mr. Thompson's speech related to his private political opinions, expressed on a private, non-school related social media platform. SER 29, 45. Courts have found that the less a plaintiff's speech has to do with the office, the less justification the office is likely to have to regulate it. *See Eberhardt v. O'Malley,* 17 F.3d 1023, 1027 (7th Cir. 1994). This is precisely the issue here.

In analyzing this step, the Supreme Court has recognized, "as the magnitude of intrusion of an employee's interest rises, so does the government's burden of justification." *U.S. v. Nat'l Treasury Employees' Union*, 513 U.S. 454, 483 (1995). Where a plaintiff's speech does not involve the subject matter of government employment and takes place outside the workplace, the government defendant cannot justify its action on the grounds of immediate workplace disruption asserted in *Pickering* and the cases that followed it. *Id*. at 470. "When government employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment protection, absent some government justification 'far stronger than mere speculation' in regulating it." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). In plain language, where speech is not directed toward any person whom the plaintiff would normally interact with in the course of daily work, and where it does not involve the terms of government

employment, there is little question of maintaining discipline or harmony at the workplace. *See Pickering*, 391 U.S. at 569-70.

Here, Appellants again focus their argument on "other conduct" unrelated to Mr. Thompson's protected Facebook post; conduct that is the subject of significant factual dispute, and has not been subject to any discovery. Appellants erroneously rely upon these disputed facts as if the same were true and undisputed. Moreover, the "harm" Appellants now attempt to rely upon was completely manufactured by Appellants in the first place. Mr. Thompson's private Facebook post was disseminated initially **by Appellants**. The pretextual "impact interviews" further circulated Mr. Thompson's private political speech – with which Appellants have personal dispute with – in an attempt to effectively "paper" his employment file with pretextual reasons for demotion. It would be fundamentally unfair, and inconsistent with applicable law and precedent, to allow Appellants to rely upon the very harm they themselves created.

Appellants' actions are also inconsistent with their claimed "harm". Most notably, prior to his demotion, Mr. Thompson was an assistant principal. SER 28. Appellants allegations of vague harm to CVSD students, staff, and teachers, contradict the actual demotion given to Mr. Thompson, now placing Mr. Thompson in daily, consistent interaction with students and other teachers, and in the position of disciplining students in his class, with no remediation or extra supervision. SER 87-88. If Appellants were worried about in-class discord, their action of unlawfully demoting Mr. Thompson – summarily and without regard to his exemplary record – do not comport with such alleged "concerns." The state has the burden of demonstrating some "nexus between the employee's speech and the employer's operations." *Piscottano v. Murphy*, 511 F.3d 247, 271 (2nd Cir. 2007). Here, Appellants improperly rely upon disputed facts and speculation, in an attempt to create such a nexus.

The above demonstrates the "investigation" of Mr. Thompson was entirely pretextual, and the proximity of Mr. Thompson's Facebook post to his administrative leave and resulting demotion, show his Facebook post was a substantial factor in his demotion, for which Appellants had no adequate justification. Any alleged "harm" Appellants suffered was self-created in an attempt to support Mr. Thompson's unlawful demotion. Any claim of future harm or disruption is entirely speculative and was, and remains, unjustified. Adults have differing political opinions, and different opinions on other matters of public concern: religion, culture, societal issues, among others. That one coworker **may** take issue with another's position is not justification for demotion, or to effectively destroy Mr. Thompson's career, or professional reputation. In the recent case of *Mahoney Area School Dist. v. B.L.*, 141 S. Ct. 2038, 2048 (June 23, 2021), the Supreme Court reiterated its long-standing constitutional principle: political speech, including unpopular or offensive political speech, is

protected. *See also Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (June 27, 2022) (high school teacher's freedom of speech and free exercise of religion were protected from government intrusion). Given the strong protections for political speech, and the serious disputes of material fact as to the Appellants' actions and intentions, the District Court's ruling denying summary judgment was appropriate.

5. <u>Absent Mr. Thompson's Protected Speech, the Appellants Would Not Have Taken the Adverse Employment Action.</u>

Appellants must demonstrate that they would have taken the same adverse employment action even absent the protected conduct. *See Mt. Healthy City School Dist. Bd. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Barzilay v. City of New York*, 2022 WL 2657169 (July 8, 2022) (finding EMTs were protected by the First Amendment when communicating with the media about the COVID-19 pandemic). Appellants do not provide any evidence (much less undisputed facts, or even any substantial argument in their Opening Brief) that Mr.

Thompson would have been subject to **any** action absent his Facebook post, let alone any demotion or other adverse action. Until August 17, 2020, Mr. Thompson had repeatedly received satisfactory or higher job performance reviews. SER 28; *see also* SER 38-43. He had been promoted several times during the course of his career with CVSD. *Id*. Indeed, just months before the Facebook post was made, Mr. Thompson received three letters of recommendation from CVSD administrators. SER 38-43. Only after Mr. Thompson's political Facebook post came to light (through the conduct of others), was Mr. Thompson subjected to the unlawful, pretextual "investigation" and subsequent demotion. Taking the facts in the light most favorable to Mr. Thompson, it is clear – or there is at least a genuine dispute of material fact – that Appellants would not have taken any action against Mr. Thompson absent the Facebook post. Despite allegations by Appellants that their actions were motivated by other similar or concerning conduct (much of which is alleged to have

occurred years before), there was never any prior discipline or counseling for the same. SER 28.

The District Court's denial of summary judgment was appropriate.

    iii.    <u>Appellants' Actions Were Not Reasonable and Questions of Fact Support the Denial of Summary Judgment.</u>

Appellants devote a significant amount of time in their Opening Brief to the reasonableness of their actions. "Government officials are entitled to qualified immunity only 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Coszalter*, 320 F.3d at 979 (quoting *Harlow*, 457 U.S. at 818). Appellants' continued focus on the alleged "other conduct" by Mr. Thompson – which is disputed, and for which the Court found an issue of material fact existed – is not persuasive. Once again, Appellants treat such facts as verity and the arguments are premised upon such

facts being genuine and undisputed. The facts are not taken in the light most favorable to Mr. Thompson.

Appellants rely in part on *Tinker v. Des Moines Independent Comm. School Dist.*, 393 U.S. 503, 514 (1969). In *Tinker*, however, the Court specifically stated:

> In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it **must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint**. Certainly where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," the prohibition cannot be sustained.

*Tinker*, 393 U.S. at 509 (emphasis added). In *Tinker*, the Court found the record did "not demonstrate any facts which might reasonably have led school authorities to forecast **substantial** disruption or **material** interference with school activities." *Id*. at 514 (emphasis added). The Court there noted that the students, wearing black armbands in protest of the Vietnam war, "neither interrupted school activities nor sought to intrude

in the school affairs or lives of others. ... In the circumstances, our Constitution does not permit officials of the State to deny their form of expression." *Id*. Appellants have not identified any interference at Evergreen Middle School where Mr. Thompson was employed. The purported interference Appellants rely upon is speculative and disputed, at best. Appellants also rely on *Glover v. Daniel*, 318 F.Supp. 1070 (1969), wherein a principal was not rehired, alleging it was because he was black. This case, however (despite being exceptionally outdated in tone and language), was appealed after trial wherein the plaintiff had the full opportunity to engage in factual determinations; the same has not been afforded to Mr. Thompson. *See id*.

Taken in the light most favorable to Mr. Thompson, the facts demonstrate that Mr. Thompson's demotion was triggered by and precipitated CVSD's "investigation," which was directed by Mr. Small. This investigation was not legitimate. CVSD's actions, including the actions of the individual Appellants, were not reasonable in light of Mr.

Thompson's private Facebook post. Prior to the post, CVSD had not received any complaint against Mr. Thompson regarding any derogatory comments, or other concerning conduct. SER 28. There is some dispute as to whether Appellants (and those Appellants specifically elected to interview) personally disagree with Mr. Thompson's Facebook post and its contents. *See* SER 78-88. Moreover, the timing of Mr. Small summarily placing Mr. Thompson on administrative leave, without regard for Mr. Thompson's unblemished tenure, is suspect and unreasonable. It came immediately after his Facebook post was disseminated by others, and ultimately to Mr. Small. Mr. Small's actions, all precipitated by and resulting directly from the Facebook post, were patently unreasonable in light of Mr. Thompson's protected speech.

The Board also acted unreasonably. First, the individual members signed a letter specifically ratifying Mr. Small's unlawful decision to demote Mr. Thompson. SER 58. There are several factors demonstrating the individual board

members should have known that demoting Mr. Thompson as a result of his Facebook post violated Mr. Thompson's clearly established freedom of speech consisting of private, political opinions. The Board met with Mr. Thompson. SER 35. At the hearing, Mr. Thompson told the Board multiple times that his posts were protected under the First Amendment. *Id*. The Board was dismissive of Mr. Thompson's evidence, concerns, and disputes. *Id*. The Board did not identify any material or substantial interference Mr. Thompson's post had on Evergreen Middle School. *See id*. Their summary ratification of Mr. Small's decision was, under the circumstances, patently unreasonable. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 867 (9th Cir. 1999).

Granting qualified immunity in this circumstance – prior to any discovery or investigation into Appellants relied upon facts – would allow state employers to discover and quash private political speech, take adverse action, and belatedly attempt to create and subsequently rely upon self-created "harm" in order

to violate the First Amendment. Appellants did not act reasonably; on the contrary, Appellants acted rashly, without regard for Mr. Thompson's rights and freedoms, and attempted to drum up controversy and adverse opinions of Mr. Thompson in order to pretextually demote him. Such actions – taken in the light most favorable to Mr. Thompson – not only allow the Court to deny summary judgment, but demand it.

## VI.   <u>CONCLUSION</u>

The District Court's denial of summary judgment was appropriate and its findings must not be disturbed. Mr. Thompson respectfully requests this Court deny Appellants' appeal, and remand this matter to the District Court for further proceedings.

RESPECTFULLY SUBMITTED this 6th day of October 2022.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By: _/s/ Megan C. Clark_
ROBERT F. GREER, WSBA #15619
MEGAN C. CLARK, WSBA #46505
Attorneys for Plaintiff/Appellee,
Randey Thompson

MICHAEL LOVE LAW, PLLC

By: _/s/ Michael Love_
MICHAEL LOVE, WSBA #20529
Attorneys for Plaintiff/Appellee,
Randey Thompson

## **<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned counsel certifies this document, Appellee's

Response Brief, contains 7,673 words, in compliance with Fed.

R. App. P. 32(a)(7). The undersigned further certify this brief

complies with the requirements of Fed. R. App. P. 32(a)(5)-(6)

in that it has been prepared using Microsoft Word in 14-point

Times New Roman.

SO CERTIFIED this 6th day of October 2022.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By: _/s/ Megan C. Clark_
ROBERT F. GREER, WSBA #15619
MEGAN C. CLARK, WSBA #46505
Attorneys for Plaintiff/Appellee,
Randey Thompson

## **PROOF OF SERVICE**

I certify that on this 6th day of October, 2022, I electronically filed the foregoing Response Brief of Appellee, Randey Thompson with the Clerk of the Court for the United States Court of Appeals, for the Ninth Circuit, by using the Appellate CM/ECF system, which will send notification to the following:

> Michael E. McFarland
> Rachel K. Platin
> Evans, Craven & Lackie, P.S.
> 818 W. Riverside, Suite 250
> Spokane, WA 99201
> mmcfarland@ecl-law.com
> rplatin@ecl-law.com
>
> Michael B. Love
> Michael Love Law, PLLC
> 905 W. Riverside, Suite 404
> Spokane, WA 99201
> mike@michaellovelaw.com

DATED this 6th day of October 2022.

> ETTER, McMAHON, LAMBERSON,
> VAN WERT & ORESKOVICH, P.C.
>
> By: _/s/ Megan C. Clark_____
> ROBERT F. GREER, WSBA #15619
> MEGAN C. CLARK, WSBA #46505
> Attorneys for Plaintiff/Appellee, Randey Thompson